HERBERT F. PATTERSON *vs.* ROBERT W. BARNES.

Essex.    December 4, 1944. — February 28, 1945.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & WILKINS, JJ.

*Agency,* What constitutes. *Practice, Civil,* Question to jury.

A ruling, at the trial of an action for personal injuries sustained in a collision of automobiles, that as a matter of law the operator of the automobile in which the plaintiff was riding was the agent or employee of the plaintiff, was error, although the plaintiff had testified that the operator was "under . . . [his] control," where he also had testified that the automobile was owned by a corporation of which he was the president and a salesman, that at the time of the accident he was on his way to see a prospective customer to sell products of the corporation, that the operator was an employee of the corporation and it was his duty to drive the salesmen where they wished to go on business, and that he had told his driver where to go: a finding would have been warranted either that the plaintiff did not have the right to control the details of the method of operating the automobile or that, if he did have such right of control, he had it only as agent of the corporation, the common employer of himself and the operator, and that the operator was not performing any service in the plaintiff's personal affairs.

An answer by a jury, in response to a question asked them by the judge without the knowledge of one of the parties the next day after they had returned a verdict and it had been recorded, had no effect.

TORT. Writ in the District Court of Southern Essex dated August 31, 1940.

On removal to the Superior Court, the action was tried before *Morton*, J.   There was a verdict for the defendant. The plaintiff alleged exceptions.

*R. L. Sisk*, for the plaintiff.

*W. G. Clark*, for the defendant, submitted a brief.

QUA, J.   The plaintiff was injured on October 31, 1939, when an automobile driven by the defendant collided with an automobile in which the plaintiff was riding.

The plaintiff testified, in substance, that he was the president and a salesman of Ackerman & Patterson, Inc., a corporation engaged in the sale of leather products; that at the time of the accident he was on his way to see a prospective customer in an effort to sell products of the corporation; that the automobile in which he was riding was owned by the corporation and was operated by one Madden, an employee of the corporation, whose duties were "to drive the salesmen where they wished to go on business"; that he had told his driver where to go; and that his driver was "under . . . [his] control" and went wherever he told him to go.

The judge ruled as matter of law that Madden was "the agent or employee" of the plaintiff and therefore instructed the jury that the plaintiff had the burden of proving that Madden was in the exercise of due care. *Bullard* v. *Boston Elevated Railway*, 226 Mass. 262, 266–268.   *Mendolia* v. *White*, 313 Mass. 318, 321.   *Prout* v. *Mystic Motor Trans. Co. Inc.*, ante, 349, 350.

The ruling that as matter of law Madden was the agent or employee of the plaintiff was wrong.   To be sure, the plaintiff was bound by his own testimony in the absence of other evidence more favorable to him.   But he testified that Madden was employed by the corporation to drive its salesmen about.   From this the jury could find that Madden was not the servant of the plaintiff personally.   The ruling of the judge seems to have been based upon the plaintiff's testimony that the driver was under his control.   The right to control the particular details of the work is often decisive as to the existence of a master and servant relationship, especially where the issue is whether the employee is a

servant or an independent contractor or whether he is the
servant of one or another of two possible masters. See, for
example, *Marsh* v. *Beraldi*, 260 Mass. 225, 231; *Khoury* v.
*Edison Electric Illuminating Co.* 265 Mass. 236, 238; *Reardon*
v. *Coleman Bros. Inc.* 277 Mass. 319, 321–322; *Shepard* v.
*Jacobs*, 204 Mass. 110; *Goyette* v. *P. J. Kennedy & Co. Inc.*
277 Mass. 283, 285. See Am. Law Inst. Restatement:
Agency, §§ 220, 227. But the control which establishes
that relationship must extend much farther into the minu-
tiae of the alleged servant's conduct than merely telling
him where to go. Almost every hirer of a vehicle with a
driver tells the driver where to go, but he does not neces-
sarily make the driver his servant. *Shepard* v. *Jacobs*, 204
Mass. 110. *Tornroos* v. *R. H. White Co.* 220 Mass. 336.
*W. S. Quinby Co.* v. *Estey*, 221 Mass. 56. *Peach* v. *Bruno*,
224 Mass. 447. *Clancy's Case*, 228 Mass. 316, 318. The
jury could have found upon the evidence hereinbefore
stated that when the plaintiff spoke of "control" he meant
no more than the right to direct the driver to what place
he should drive. *Santoro* v. *Bickford*, 229 Mass. 357, 359.

But even if the jury found that the plaintiff had the right
to do more than direct the driver where to go, and that he
had the right to direct the particular details relating to the
method of driving, they were still not bound to find that
Madden was the agent or servant of the plaintiff. One
fundamental element in every master and servant relation-
ship or in any agency is that the alleged agent or servant
does something for or in behalf of the alleged principal or
master. The American Law Institute defines a servant as
"a person employed by a master to perform service in his
affairs whose physical conduct in the performance of the
service is controlled or is subject to the right to control by
the master." Restatement: Agency, § 2. See also § 220,
and definition of agency in § 1 (1). The jury were not
obliged to find that Madden performed any service in the
plaintiff's affairs. They could find that the only affairs in
which both Madden and the plaintiff were interested were
the affairs of the corporation by which both were employed;
that Madden and the plaintiff, with respect to driving the

automobile, were at most merely fellow servants of a common employer; and that any directions or orders which the plaintiff had the right to give to Madden were not the plaintiff's own directions or orders but were those of the common employer delivered through the plaintiff as its agent. "The doctrine of respondeat superior does not apply to create liability against an agent, even though other agents are subject to his orders in the execution of the principal's affairs." Am. Law Inst. Restatement: Agency, § 358, comment a. Restatement: Torts, § 491, comment d. Shearman and Redfield on Negligence (Rev. ed.) § 265. *Hewett* v. *Swift*, 3 Allen, 420, 425. *Santoro* v. *Bickford*, 229 Mass. 357. *Tibbetts* v. *Wentworth*, 248 Mass. 468, 471–473. *Withington* v. *Jennings*, 253 Mass. 484, 486. *Handley* v. *Lombardi*, 122 Cal. App. 22, 28–29. *Brown* v. *Lent*, 20 Vt. 529, 533.

If the ruling of the judge were to be sustained it would seem to follow that every member of an ordinary gang of laborers would, as matter of law, be the servant of his foreman instead of the common employer. Or would he be the servant of both although the employer and the foreman were not engaged in a joint enterprise? Either proposition is unsound and inconsistent with established principles of the law of agency. See *Skerry* v. *Rich*, 228 Mass. 462; *Ducey* v. *Brunell*, 250 Mass. 114, 117; *Cargill* v. *Bower*, 10 Ch. D. 502, at page 514. Compare *Slowik* v. *Union Street Railway*, 282 Mass. 249; *Stegman* v. *Sturtevant & Haley Beef & Supply Co.* 243 Mass. 269.

The judge's ruling was not rendered harmless by the statement by the members of the jury in answer to a question of the judge that they had found the plaintiff "contributorily negligent." · Even if this referred to personal negligence of the plaintiff, although he was not driving the automobile, the answer was of no effect in the case. The jury had returned a general verdict for the defendant which had been accepted by the judge and duly recorded by the clerk. On the next day, without the knowledge of the plaintiff, the judge "assembled the jury," propounded to them a question as to contributory negligence of the plain-

tiff, and received the foregoing answer. The practice of asking juries suitable questions designed to elicit specific findings which may have the effect of eliminating doubtful questions of law is favored by an express provision of statute (G. L. [Ter. Ed.] c. 231, § 124) and has been liberally upheld in many decisions, including cases where questions have been asked and answered orally upon the return of a verdict.[1] But a time must come when a trial ends and when the parties can safely cease attendance upon the court. See *Kullberg* v. *O'Donnell,* 158 Mass. 405. Ordinarily that time in jury cases is the time of the formal acceptance and recording of a verdict decisive of the whole case. *James* v. *Boston Elevated Railway,* 213 Mass. 424, 427. *Brown* v. *Dean,* 123 Mass. 254, 267. *Byrne* v. *Boston Elevated Railway,* 198 Mass. 444, 451. *Flaherty* v. *Boston Elevated Railway,* 235 Mass. 422, 424. *Traverse* v. *Wing,* 256 Mass. 320, 323. *Newell* v. *Rosenberg,* 275 Mass. 455, 459. *Commonwealth* v. *Green,* 302 Mass. 547, 557. After the verdict was accepted and recorded the judge had no power to ask the jury questions. *Green* v. *Clay,* 10 Allen, 90, 93. *Coffin* v. *Jones,* 11 Pick. 45. A statement in *Dorr* v. *Fenno,* 12 Pick. 521, at page 525, which might be thought to be contrary is probably to be explained either on the ground that the questions were asked for the purpose of ascertaining with reference to a new trial whether there had been improper conduct on the part of the jury and not for the purpose of inserting special findings into the verdict, or perhaps on the ground that the questions were asked "immediately after the affirmance of the verdict" (page 525) and so became part of the act of affirmance. Otherwise the statement, if broadly construed, is opposed to later decisions hereinbefore cited.

*Exceptions sustained.*

---

[1] See, for example, *Spoor* v. *Spooner,* 12 Met. 281; *Lawler* v. *Earle,* 5 Allen, 22; *Graves* v. *Washington Marine Ins. Co.* 12 Allen, 391, 396; *Mair* v. *Bassett,* 117 Mass. 356, 358–359; *Hadley* v. *Heywood,* 121 Mass. 236; *Spurr* v. *Shelburne,* 131 Mass. 429; *Hart* v. *Brierley,* 189 Mass. 598; *Ellis* v. *Block,* 187 Mass. 408, 414; *Burke* v. *Hodge,* 211 Mass. 156, 162; *Moskow* v. *Burke,* 266 Mass. 286, 290; *Purcell* v. *Rose,* 261 Mass. 431, 432; *Dziegiel* v. *Westford,* 274 Mass. 291, 296; *Wallace* v. *Ludwig,* 292 Mass. 251, 259; *Burgess* v. *Giovannucci,* 314 Mass. 252, 256.