E. Michael GERLI, et al.,
Plaintiffs, Appellants,

v.

G.K. HALL & CO., et al.,
Defendants, Appellees.

No. 87–1210.

United States Court of Appeals,
First Circuit.

Heard April 7, 1988.

Decided May 27, 1988.

Rehearing and Rehearing En Banc
Denied July 6, 1988.

Joseph A. Bosco with whom Bosco, Curry & Tesoro, Boston, Mass., was on brief for plaintiffs, appellants.

Michael J. Liston with whom Palmer & Dodge, Boston, Mass., was on brief for defendants, appellees.

Before COFFIN, TORRUELLA and SELYA, Circuit Judges.

COFFIN, Circuit Judge.

Plaintiffs entered into contracts with defendant, a publisher, to publish their academic manuscripts. When defendant later cancelled publication, plaintiffs sued for breach of contract, fraud, and violation of an unfair-and-deceptive trade practices statute, Mass.Gen.L.Ann. Ch. 93A, §§ 1–11 (1984). Before trial, defendant admitted contract liability; at the close of the evidence, the court directed a verdict on the fraud claim and on the claim for a willful and knowing violation of Ch. 93A. The ordinary Ch. 93A claim was submitted to the jury, which returned a verdict for defendant. Plaintiffs now appeal from various rulings and instructions of the district court. We find no error and affirm.

### I.

Plaintiffs are twenty-two academic authors who, between 1973 and 1978, entered into contracts with a Massachusetts publisher, defendant G.K. Hall & Co., to publish their manuscripts as a part of Hall's "Twayne World Author Series." The contracts obligated Hall to publish the manuscripts unless prevented "by circumstances beyond the publisher's control." Twenty of the authors submitted their completed manuscripts either before the contract deadline or within an extension agreed to by Hall. In May and June of 1982, however, Hall notified the plaintiffs that, due to a "change in market conditions," it would not publish any of the manuscripts. Hall explained that libraries, which constituted the primary market for the Twayne series, were reducing their purchases because of budget cuts, thus requiring Hall to scale back its Twayne publications.

Plaintiffs then brought this diversity action for breach of contract, fraud, and unfair and deceptive trade practices in violation of Mass.Gen.L.Ann. Ch. 93A. The gist of plaintiffs' claims was that Hall had known at the time it entered into or extended the contracts, or at least well before it actually cancelled the contracts, of the likelihood that a decline in demand for its publications would cause it to cancel. Plaintiffs asserted that Hall's failure to disclose this information earlier constituted fraud and a willful or knowing violation of Ch. 93A, entitling plaintiffs to double or treble damages under Ch. 93A, section 11. Plaintiffs also sought damages for harm to reputation and for emotional distress, although they filed no separate claim for damage to reputation or for infliction of emotional harm.

On the day before trial, plaintiffs moved to add as defendants the ITT Corporation, which owned Hall at the time of the cancellations, and Macmillan, Inc., which acquired Hall in 1985. The district court denied the motion. On the first day of trial, Hall admitted contract liability. The district court then bifurcated the trial into liability and damage phases, and the parties proceeded to try the fraud and Ch. 93A liability issues to a jury. At the close of the evidence the court directed a verdict for Hall on the fraud and willful-and-knowing Ch. 93A claims. The jury then found for Hall on the ordinary Ch. 93A claim. The parties then settled the issue of contract damages, thus obviating the need for a trial on any damages issue. Plaintiffs renewed their motion to add ITT and Macmillan as defendants, and the district court denied the motion.

Plaintiffs now appeal. They assert that the district court misinterpreted Ch. 93A

and thus erred in certain evidentiary rulings and jury instructions and in directing a verdict on the willful-and-knowing issue. They complain that they were unfairly precluded from offering evidence of emotional distress and harm to reputation. They claim that the court should not have directed a verdict on the fraud count. Finally, they argue that the district court should have permitted them to add ITT and Macmillan as defendants. We address each of these claims in turn.

## II.

Under Ch. 93A, "unfair or deceptive acts or practices in the conduct of any trade or commerce are ... declared unlawful." Mass.Gen.L.Ann. Ch. 93A, § 2. A regulation of the Massachusetts Attorney General, issued under the authority of Ch. 93A § 2(c), makes it a Ch. 93A violation to "fail[ ] to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction." Mass.Regs.Code tit. 940, § 3.16(2). Ch. 93A, section 11 permits private persons engaged in trade or commerce to bring a civil action for legal and equitable relief for Ch. 93A violations.

### A. *Jury Instructions*

Plaintiffs claim that the district court erroneously instructed the jury, both before and after the presentation of evidence, that a mere breach of contract is insufficient to establish Ch. 93A liability. Plaintiffs never objected to these instructions, however, as required by Fed.R.Civ.P. 51, and we see no plain error, so we do not reach this issue. Plaintiffs also complain of an instruction suggesting that conduct only violates Ch. 93A if it is within some established concept of unfairness or deception, *and* is immoral, unethical, oppressive, or unscrupulous, *and* causes substantial injury to others. Plaintiffs argued in the district court that all three factors need not be present; the court then reinstructed the jury to this effect, and plaintiffs specifically stated their satisfaction with the clarified instruction. We therefore will not consider plaintiffs' claim, raised for the first time on appeal, that this clarification was inadequate.

■ Plaintiffs also requested two instructions directing the jury to consider whether Hall acted unfairly or deceptively *after* the execution of the contracts. Plaintiffs wanted the jury to determine whether, during this period, Hall knew or should have known of the risk that it might cancel the contracts because of changed market conditions, and either (1) failed to inform plaintiffs of this risk, or (2) by granting contract extensions, induced plaintiffs to continue to believe that their manuscripts would be published. The court refused the requested instructions and instead told the jury to focus on what was or was not disclosed "at the time these contracts were entered into." Plaintiffs renewed their objection after this instruction and have thus preserved the point.

We think that the district court's instruction and its refusal of plaintiffs' instructions were proper. The Attorney General's regulation, Mass.Regs.Code tit. 940, § 3.16(2), which we have quoted above, clearly focuses on the duty to disclose only at the time a transaction is entered into. Plaintiffs cite no case, and we know of none, that extends the duty that this regulation creates into a continuing duty to disclose and update during the period after a transaction is entered into.

Plaintiffs assert that, this regulation aside, Ch. 93A's more general proscription of unfair or deceptive acts and practices applies to Hall's conduct after it entered into the contracts. Although this would appear to be true, there was still no evidentiary predicate for the submission of either of plaintiffs' theories to the jury. That is, there was no evidence that, after entering the contracts, Hall knew or should have known that changed market conditions might cause it to cancel plaintiffs' contracts—and thus no basis for instructing the jury to consider whether Hall failed to disclose such knowledge or unfairly or deceptively extended plaintiffs' contracts. Our brief summary of the pertinent evidence follows.

There was uncontradicted testimony that, up until the time of the cancellations, Hall had every intention of publishing the manuscripts. The evidence was similarly uncontradicted that it was not until the spring of 1982 that Hall received an analysis of changed market conditions for its World Authors series, along with legal advice that such changed market conditions would justify cancellation of plaintiffs' contracts. Although Hall had in 1976 cancelled a different series—the World Leader Series—because of lower-than-expected sales, Hall had not cancelled the contract of any individual author in that series, and Hall had published any work then under contract that any individual author chose to complete. And in November of 1981 Hall had cancelled a Chinese series because of poor sales and cancelled the contracts of the authors in that series whose works were then overdue. But this occurred well *after* Hall had entered or extended the contracts of any of the plaintiffs herein.[1] In sum, plaintiffs introduced no evidence that Hall knew or should have known, after it entered or when it extended plaintiffs' contracts, that changed market conditions might cause it to cancel. Absent such evidence, the district court did not err in instructing the jury to focus on what Hall knew at the time of, rather than after, entering the original contracts with plaintiffs.

## B. *Evidentiary Rulings*

■ As part of their attempt to establish Hall's knowledge that changed market conditions might cause it to cancel plaintiffs' contracts, plaintiffs offered a letter showing that in 1976, Hall declined to agree to publish two translations based on "the bitter realities of the current library market." The district court excluded the letter on relevance grounds. As the letter involved only the refusal to enter a contract rather than the cancellation of an existing contract, we agree that it was of dubious relevance and thus find no abuse of discretion in its exclusion.

Plaintiffs next complain that the district court prevented them from offering evidence of Hall's conduct after it cancelled the contracts. Plaintiffs apparently hoped to establish that Hall had continued to treat them unfairly or deceptively even after the cancellations. In one instance, the court sustained an objection to a question asked of Hall's editor-in-chief as to whether Hall made a profit in 1983, the year after the cancellations. Plaintiffs fail to note, however, that they were later permitted to elicit substantially the same information from Hall's president. In another instance, plaintiffs attempted to introduce a letter that one of the plaintiffs wrote to Hall after the cancellations. After Hall objected, the district court excluded the letter on the ground that plaintiffs had not laid an adequate foundation for its relevance. Plaintiffs then offered a letter from Hall's attorney responding to the excluded letter; Hall stated that it had no objection and the court admitted the response. Plaintiffs have not clearly explained to us, and we are unable to see, how the district court abused its discretion in any of these rulings.

## C. *Directed Verdict on Willful or Knowing Ch. 93A Violations*

■ Plaintiffs argue that the court erred in directing a verdict for Hall on their claim that Hall had willfully or knowingly violated Ch. 93A. Although our review of the evidence and the reasonable inferences to be drawn therefrom, taken in the light most favorable to plaintiffs, convinces us that the court acted properly, we see no need to review that evidence in detail. It is clear as a simple matter of logic that this jury, which after proper instructions found no ordinary Ch. 93A violation, would not have found a willful or knowing violation had it been given the opportunity to do so. If there was any error, therefore, it was harmless.

## III.

Turning to the question of emotional distress and damage to reputation, plaintiffs

---

**1.** For the same reason we find no error in the district court's ruling precluding plaintiffs from arguing to the jury that the contract extensions constituted a Ch. 93A violation.

argue that they were unfairly precluded from offering evidence on these issues in the liability phase of the trial. As far as we are able to ascertain from the record, plaintiffs never asserted independent claims for infliction of emotional harm or damage to reputation; they merely sought compensation for emotional suffering and for damage to reputation as a part of their contract, Ch. 93A, and fraud claims.[2] Without addressing the issue of whether Massachusetts allows the recovery of such damages on such claims, we note that the district court, because it had bifurcated the trial, was entirely within its discretion in postponing consideration of emotional and reputational injuries until the (ultimately unnecessary) damages phase of the trial. There being no issues of liability on independent claims for infliction of emotional harm and damage to reputation, there was no need to address emotional and reputational damages unless a damages phase became necessary.

### IV.

We next turn to the directed verdict for Hall on the fraud claim. Plaintiffs argue that Hall misrepresented its intention to publish the manuscripts, by promising to publish when it knew or should have known that in fact it would not publish. Under Massachusetts law, a promissory statement cannot be the basis for a claim of misrepresentation unless at the time the promise was made the promissor had no intention of carrying it out. *Barrett Associates, Inc. v. Aronson*, 346 Mass. 150, 190 N.E.2d 867 (1963). Here, as we have pointed out above, there was no evidence from which the jury could infer such an intention. Plaintiffs have been unable to point to any other statement made by Hall that a jury could reasonably conclude was false

when made. We therefore conclude that the verdict was properly directed.

### V.

Finally, we turn to the district court's denial of plaintiffs' motions, on the day before trial and after trial, to add ITT and Macmillan as defendants. Plaintiffs' theory was that ITT had played a role in the decision to cancel and that Macmillan was vicariously liable for Hall's treatment of plaintiffs. The allowance of eleventh-hour amendments adding parties is committed to the discretion of the district court. *See Serrano Medina v. United States*, 709 F.2d 104, 106 (1st Cir.1983). In view of the obvious prejudice to Macmillan and ITT that would have resulted from being brought into the case so late, and in view of the minimal evidence that plaintiffs offered in support of their motions, we are unable to see any abuse of discretion.

*Affirmed.*

---

**2.** The lone indication of an independent emotional distress claim was the district court's statement, in ruling that plaintiffs could not pursue a certain line of questioning as to Hall employees' state of mind, that plaintiffs' offer of proof had failed to meet the requirements for recovery for infliction of emotional harm laid out in *Agis v. Howard Johnson Co.*, 371 Mass. 140, 355 N.E.2d 315 (1976). The district court was apparently of the view that plaintiffs' offer of proof did not, as a matter of law, describe conduct that was sufficiently "extreme and outrageous" to ground liability. *See Agis*, 371 Mass. at 145, 355 N.E.2d at 319. We agree. We note that at no time did the district court preclude further attempts by plaintiffs to prove such conduct through other witnesses; plaintiffs simply chose not to make any such further attempts.