Robert J. BOLEN, Jr., Plaintiff,

v.

PARAGON PLASTICS, INC., Gilbert Be-
inhocker, and Risdon Corporation,
Defendants.

Civ. A. No. 90–10095–C.

United States District Court,
D. Massachusetts.

Dec. 20, 1990.

222

Stuart T. Rossman, Lee H. Glickenhaus, Gaston & Snow, Boston, Mass., for plaintiff.

John Phillips Connelly, Hutchins & Wheeler, Marc K. Temin, Foley, Hoag & Eliot, Boston, Mass., for defendants.

## MEMORANDUM

CAFFREY, Senior District Judge.

This case is before the Court on the defendant's, Gilbert Beinhocker ("Beinhocker"), motion for summary judgment.

Fed.R.Civ.P. 56. Jurisdiction is founded upon diversity of citizenship, and the amount in controversy exceeds $50,000. The plaintiff, Robert J. Bolen ("Bolen"), brought this action against defendant, Paragon Plastics, Inc. ("Paragon") and Paragon's Chief Executive Officer, Beinhocker, alleging breach of their Sales Representative Agreement ("Agreement"). Defendant, Paragon, then counterclaimed for breach of contract and for a declaratory judgment. The complaint also contained three counts against Risdon Corporation ("Risdon"), a company that purchased certain assets from Paragon. On September 25, 1990, this Court granted Risdon's motion to dismiss as to all three claims against it for failure to state a claim for which relief could be granted. Beinhocker now moves for summary judgment as to both claims against him for fraud and for violation of Mass.Gen.L. ch. 93A. In connection with this motion, Beinhocker has moved to strike portions of Bolen's affidavit. Upon consideration, Beinhocker's motion for summary judgment should be denied.

## I.

Defendant, Paragon, is a Massachusetts corporation engaged in the manufacture and sale of molded plastic products. By an Agreement dated April 1, 1985, plaintiff, Bolen, became a sales representative for Paragon. The Agreement states that Bolen would act in the capacity of an independent contractor. The Agreement also states that Bolen is to use his best efforts to solicit and obtain orders for the purchase of Paragon's products. The Agreement contained a list of the only companies from which Bolen could solicit orders. Under the terms of the Agreement, Paragon was to pay Bolen a commission based upon a percentage of the orders he obtained from the specified companies.

Working under this Agreement, Bolen obtained new business for Paragon, including what the amended complaint deems the "Wisk Account," which called for the production of plastic spouts and closures for "Wisk," a product manufactured by Lever Brothers Corporation ("Lever Brothers").

Bolen's amended complaint states that he spent substantial time and money over the course of approximately three years to obtain the Wisk Account, an account that he alleges was worth at least 4–5,000,000 dollars annually to Paragon. Such plastic closures, it is alleged, are used in the industry for seven to ten years, giving the Wisk Account an anticipated value over the life of the closure of 28–50 million dollars.

The amended complaint alleges that Beinhocker and Risdon directly negotiated the sale between Paragon and Risdon. According to Bolen's affidavit, in the spring of 1989, he had several telephone conversations with Beinhocker during which Beinhocker assured Bolen that if Paragon sold the Wisk Account, Bolen would receive the commissions to which he was entitled. (Bolen affidavit, ¶ 6). Further, Bolen's affidavit states that on May 4, 1989, it was requested that Bolen participate in a meeting with Risdon, representatives from Lever Brothers and Paragon, at which time the transfer of the Wisk Account from Paragon to Risdon was discussed. (Bolen affidavit, ¶¶ 7, 8).

According to Bolen's affidavit, Bolen again met with Beinhocker on May 10, 1989 to discuss Beinhocker's promises, and the assurances at the May 4 meeting that Bolen would be compensated for facilitating the transfer. (Bolen affidavit, ¶ 13). Bolen alleges that at the May 10 meeting, Beinhocker told Bolen that he would pay Bolen "high five figures" as compensation for his acquiescence to, and assistance in, facilitating the sale of the Wisk Account to Risdon. (Amended Complaint, ¶ 14). Beinhocker denies having made such a statement. (Beinhocker affidavit, ¶ 8). He admits, however, that he and Bolen engaged in "salesmen bantering" during which he told Bolen that as a Paragon employee, he might receive a bonus if Paragon received a high price from Risdon. (Answer to Interrogatory 7). Bolen states that he relied on Beinhocker's representations by working to facilitate the sale to Risdon, actions he would not have taken absent Beinhocker's promises. (Bolen affidavit, ¶ 16). The negotiations between Paragon and Risdon

eventually culminated in the sale to Risdon of the Wisk Account and other Lever Brothers accounts on June 9, 1989 for $2,000,000. Bolen instituted this action on January 12, 1990, and on January 22, 1990, he received a letter from Beinhocker, purporting to terminate the Agreement.

Bolen asserts ten claims against the two remaining defendants arising out of these facts. Bolen asserts two claims against Beinhocker for fraud and for unfair and deceptive trade practices. In addition, he maintains eight claims against Paragon. His first claim is one for breach of the Agreement for failure to pay commissions that he would otherwise have received had Paragon not sold the account to Risdon. Bolen alleges that these commissions would have amounted to at least $750,000. Bolen's remaining seven counts against Paragon are as follows: breach of an implied duty of good faith and fair dealing; quantum meruit; promissory estoppel; fraud; declaratory judgment; breach of the Agreement for purportedly terminating on January 22; and unfair and deceptive trade practice.

## II.

Defendant, Beinhocker, has moved for summary judgment as to Bolen's claims against him for fraud and for violation of Mass.Gen.L. ch. 93A. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The moving party may satisfy this burden by showing that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553.

Only after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact does the party opposing the motion bear the burden of responding. *Id.* at 321, 106 S.Ct. at 2551; *Adickes*, 398 U.S. at 159–60, 90 S.Ct. at 1609. The opposing party may not rest upon the mere allegations or denials in its pleading, but must respond with affidavits or otherwise to show the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); *Adickes*, 398 U.S. at 159–60, 90 S.Ct. at 1609. A dispute about a material fact is a "genuine issue" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). In light of this standard, this Court shall examine the plaintiff's claims against Beinhocker.

### A. Motion to Strike

It is first necessary to address Beinhocker's motion to strike portions of Bolen's affidavit pursuant to Fed.R.Civ.P. 12(f). A party may move to strike any portion of an affidavit that violates Fed.R. Civ.P. 56(e). *Lacey v. Lumber Mut. Fire Ins. Co. of Boston*, 554 F.2d 1204, 1205 (1st Cir.1977) (quoting Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2738 (1983)). Hearsay evidence which would be inadmissible at trial cannot be considered on a motion for summary judgment. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). A court will disregard only the inadmissible portions of an affidavit of which portions have been stricken. Beinhocker points to five paragraphs in the affidavit that he alleges are either conclusory or constitute hearsay. Even if all five portions of the affidavit were stricken, this Court's decision to deny Beinhocker's motion for summary judgment would not be altered for the reasons stated below in the discussion of the fraud

claim. Nonetheless, for purposes of addressing Beinhocker's motion to strike, each of these paragraphs will be briefly addressed in light of the limited factual record before the Court at this stage of the litigation.

■■■ 1. Paragraph ten of Bolen's affidavit states that "At this meeting, in relation to the possible sale of the Wisk Account, representatives of Lever Brothers asked 'what about the Bolens?'" Beinhocker attacks this paragraph on the grounds that it constitutes hearsay. Hearsay is an oral or written assertion used to prove the truth of the matter asserted. Fed.R.Evid. 801. According to the very definition of hearsay, an inquiry is not an assertion, and therefore does not constitute hearsay. *United States v. Lewis*, 902 F.2d 1176, 1179 (5th Cir.1990); *Inc. Publishing Corp. v. Manhattan Magazine*, 616 F.Supp. 370, 388 (S.D.N.Y.1985), *aff'd*, 788 F.2d 3 (2d Cir.1986); *see United States v. Vest*, 842 F.2d 1319, 1330 (1st Cir.), *cert. denied*, 488 U.S. 965, 109 S.Ct. 489, 102 L.Ed.2d 526 (1988). Furthermore, the plaintiff is correct in arguing that the statement is not being used to prove the truth of the matter asserted.

■■■ 2. Similarly, Beinhocker attacks paragraph eleven which states that "In response to this question, the Lever Brothers representatives were assured that the Bolens 'would be taken care of.'" Paragraph eleven does not explicitly state who "assured" Lever Brothers that Bolen would be "taken care of." Given that the assurance came in response to Lever Brothers' inquiry "What about the Bolens," however, the one thing that is clear is that someone other than Bolen made the assurances. Furthermore, Bolen's affidavit and his memorandum in opposition to the motion to strike clarify that Beinhocker made this alleged statement. (Bolen affidavit, ¶ 13). Thus, as a statement of a party opponent, paragraph eleven does not constitute hearsay. Fed.R.Evid. 801(d)(2).

■■■ 3. Beinhocker next attacks the second sentence of paragraph twelve which states that "Indeed, I reassured Lever Brothers that the sale would not be detrimental to its business interest and encouraged it to allow the sale to take place." A statement is not hearsay if it is not used to prove the truth of the matter asserted, but rather, is used to prove an operative fact that gives rise to legal consequences. *United States v. Porter*, 482 F.2d 933, 934 n. 5 (5th Cir.1973); *Safeway Stores, Inc. v. Combs*, 273 F.2d 295, 296 (5th Cir.1960); 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 801(c)[01] (1990); *see Commonwealth v. Walter*, 388 Mass. 460, 466, 446 N.E.2d 707 (1983). Any action taken by Bolen as a result of Beinhocker's alleged promise of compensation is relevant to the legally operative fact of reliance, a necessary element to a claim of fraud under Massachusetts law. Thus, the truth of the assertion that the sale would not be detrimental to Lever Brothers' business interests is not the fact that is sought to be proved. Rather, this statement is used to demonstrate the actions Bolen took in reliance on Beinhocker's alleged promise. Consequently, Bolen's statement that he encouraged the sale should not be stricken from his affidavit.

■■■ 4. The next portion of the affidavit challenged by Beinhocker is the third sentence of paragraph fifteen which states that "It is thus clear to me that Beinhocker never had any intention of fulfilling this promise." Defendant is correct in his assertion that this statement is conclusory, and should be given no consideration for purposes of this motion for summary judgment. *See Roslindale Coop. Bank v. Greenwald*, 638 F.2d 258, 261 (1st Cir.) (conclusory reiterations of the allegations contained in complaint should not be considered in motion for summary judgment), *cert. denied*, 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 108 (1981); *Bright v. Moss Ambulance Serv., Inc.*, 824 F.2d 819, 824 n. 6 (10th Cir.1987) (same); *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir.1972) (same); Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2738 (1983). Certainly, Bolen has no personal knowledge of Beinhocker's state of mind at the time the alleged statement was made.

5. Lastly, Beinhocker challenges as conclusory the second sentence of paragraph sixteen which states, "Had I known that Beinhocker was not going to honor his promise I would not have done so." This statement is more than a mere conclusion as it goes to the issue of reliance.

## B. Fraud

The first claim asserted against Beinhocker is Count Nine's allegation of fraud. To recover for fraud under Massachusetts law, a plaintiff must allege and prove that the defendant made a false representation of material fact with knowledge of its falsity, that the defendant made the statement for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied on the representation to his or her detriment. *Metropolitan Life Ins. Co. v. Ditmore,* 729 F.2d 1, 4 (1st Cir.1984) (*quoting Barrett Assoc., Inc. v. Aronson,* 346 Mass. 150, 152, 190 N.E.2d 867 (1963)); *Slaney v. Westwood Auto, Inc.,* 366 Mass. 688, 703, 322 N.E.2d 768 (1975). Plaintiff's reliance on the misrepresentation must be reasonable. *Chedd–Angier Prod. Co. v. Omni Pub. Int'l, Ltd.,* 756 F.2d 930, 939 (1st Cir.1985); *Saxon Theatre Corp. of Boston v. Sage,* 347 Mass. 662, 667-7, 200 N.E.2d 241 (1964). One way of evaluating the reasonableness of reliance is by determining if the alleged misrepresentation was sufficiently specific to justify plaintiff's reliance on it. *Saxon Theatre Corp.,* 347 Mass. at 666–67, 200 N.E.2d 241.

In satisfying these elements, it is the general rule that statements promissory in nature and statements of conditions to exist in the future are not actionable. *Gerli v. G.K. Hall & Co.,* 851 F.2d 452, 456 (1st Cir.1988); *Doody v. John Sexton & Co.,* 411 F.2d 1119, 1121 n. 1 (1st Cir.1969); *Barrett Assoc., Inc. v. Aronson,* 346 Mass. 150, 152, 190 N.E.2d 867 (1963); *Yerid v. Mason,* 341 Mass. 527, 530, 170 N.E.2d 718 (1960). There is an important exception made to this rule, however, if at the time the defendant made the statement, he or she did not intend to carry out the promise. *Gerli,* 851 F.2d at 456; *Doody,* 411 F.2d at 1121 n. 1; *Barrett,* 346 Mass. at 152, 190 N.E.2d 867.

Thus, the present intent, or state of mind, of the defendant at the time the promises were made becomes the relevant issue in a case such as the present one where a promise was allegedly made to act in the future, namely, to compensate Bolen if the deal was consummated. Under Massachusetts law, lack of present intent constitutes a misrepresentation of a material fact. *Barrett,* 346 Mass. at 152, 190 N.E.2d 867. Furthermore, it is a fact susceptible of proof just like any other fact. *Id.* Due to the difficulty of presenting proof of intent in fraud cases, however, the First Circuit has advised caution when disposing of the state of mind issue on summary judgment. *Metropolitan Life Ins. Co,* 729 F.2d at 5.

Applying the Massachusetts law of fraud as discussed above, Beinhocker puts forth two different arguments to support his contention that he is entitled to a judgment as a matter of law. First, he argues that Bolen has failed to assert in his amended complaint that at the time the alleged promise was made, Beinhocker had no intention of compensating Bolen. Bolen states in his affidavit that during the spring of 1989, Beinhocker reassured Bolen several times that if Paragon sold the Wisk Account, Bolen would receive the commissions to which he was entitled. (Bolen affidavit, ¶ 6). In addition, the amended complaint alleges, and for purposes of this motion we draw all inferences in Bolen's favor, that Beinhocker represented that Bolen would be compensated in the "high five figures." (Amended Complaint, ¶ 14). It is uncontested that Bolen has not been compensated even though the parties consummated the sale of assets, including the Wisk Account, to Risdon. These facts alone create a material issue of fact as to whether Beinhocker intended at the time he made the alleged statement to fulfill the promise to compensate, especially when viewed in the context of the First Circuit's advice that courts exercise caution in fraud cases when granting summary judgment on the issue of state of mind.

Beinhocker's second argument in support of his motion for summary judgment is that Bolen cannot show that he relied on the alleged misrepresentations. In support of this argument, Beinhocker notes that the Agreement did not establish that Bolen's assistance was necessary to transfer assets such as the Wisk Account. This argument is not compelling. In his affidavit, Bolen asserts that during the spring of 1989, Beinhocker assured him by telephone that he would receive his commission if the sale went through. Bolen alleges in his amended complaint that in reliance on Beinhocker's promises of compensation, he facilitated the transfer to Risdon. (Amended Complaint, ¶¶ 20, 68). Thus, on May 4, 1989 he attended a meeting with representatives from Risdon, Lever Brothers and Beinhocker. (Bolen affidavit, ¶¶ 7, 8). It is significant that he was asked to attend that meeting. (Bolen affidavit, ¶ 7). From this meeting, it could be inferred that Bolen facilitated or aided the sale.

This evidence that Bolen facilitated the transfer is supported by Bolen's assertion that he had established a close relationship with Lever Brothers over the course of the three years he spent obtaining the Wisk Account and thereafter. (Bolen Affidavit, ¶ 9). This relationship with Lever Brothers might well have been close enough that Lever Brothers would not have consented to the sale to Risdon had Bolen not participated in the negotiations and encouraged the sale, even though such assent was not mandated by the terms of the Agreement itself. Lever Brothers' inquiry about "the Bolens" at the May 4 meeting also suggests that Bolen played a role in the sale to Risdon. Consequently, although the details have not been fully explored at this point, there would seem to be a genuine issue of material fact as to whether Bolen relied on Beinhocker's alleged representation.

## C. 93A Claim

Beinhocker has also moved for summary judgment on Count Ten which alleges a violation of Mass.Gen.L. ch. 93A, § 11. The Massachusetts Legislature intended ch. 93A as originally enacted to improve the commercial relationship between consumers and businessmen. *Manning v. Zuckerman*, 388 Mass. 8, 12, 444 N.E.2d 1262 (1983). The Legislature later broadened the scope of ch. 93A by adding section 11 which provides a remedy for unfair or deceptive acts by one businessman against another businessman. *Id.* More specifically, ch. 93A, § 11 allows recovery for damages to "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss ... as the result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act...." Mass.Gen L. ch. 93A, § 11. Section one defines "trade" and "commerce" to "include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property...." Mass.Gen.L. ch. 93A, § 1(b).

It is unequivocally established that disputes between employers and employees fall outside the scope of section 11. *See Bertrand v. Quincy Mkt. Cold Storage & Warehouse*, 728 F.2d 568, 571 (1st Cir. 1984); *Riseman v. Orion Research, Inc.*, 394 Mass. 311, 313, 475 N.E.2d 398 (1985); *Weeks v. Harbor Nat'l Bank*, 388 Mass. 141, 144, 445 N.E.2d 605 (1983); *Manning*, 388 Mass at 14, 444 N.E.2d 1262. The Supreme Judicial Court first reached this conclusion in *Manning v. Zuckerman*. 388 Mass. at 14, 444 N.E.2d 1262. In *Manning*, the court explained that section 11 prohibits deceptive acts arising out of dealings "between discrete, independent business entities, and not those that may occur within a single company." *Id.* at 12, 444 N.E.2d 1262. The court further reasoned that section 11 embraces marketplace transactions, not claims "arising from the ordinarily cooperative circumstances of the employment relationship." *Id.* at 13, 444 N.E.2d 1262. Put another way, the services contemplated by section 11 are those offered to the public rather than those sold by an employee to an employer. *Id.* Thus, the *Manning* court concluded that the trial court was correct in dismissing the plain-

tiff's 93A claim against his employer for unfair and deceptive acts in connection with an agreement terminating his employment.

In support of his motion for summary judgment, Beinhocker argues that the reasoning of *Manning* applies to the relationship between Bolen and Beinhocker because Bolen was essentially an employee. Bolen, however, argues that he is an independent contractor, not an employee, and therefore, that *Manning* does not apply to bar his action under 93A.[1] Under Massachusetts law, the critical issue in determining an individual's status as either an employee or an independent contractor is the control over the individual. *Alfonso v. City of Boston*, 587 F.Supp. 1342, 1347 (D.Mass.1984); *Silvia v. Woodhouse*, 356 Mass. 119, 124, 248 N.E.2d 260 (1969); *Cowan v. Eastern Racing Ass'n, Inc.*, 330 Mass. 135, 141, 111 N.E.2d 752 (1953); *Patterson v. Barnes*, 317 Mass. 721, 722–23, 60 N.E.2d 82 (1945). Actual control is not determinative, but rather, the question is the right to control. *Cowan*, 330 Mass. at 141, 111 N.E.2d 752. If there is no right to control, then the individual is an independent contractor. *Id.*

To support his argument that Bolen is an employee, Beinhocker emphasizes that the five year contract, renewable automatically from year to year thereafter, requires Paragon to provide Bolen with insurance. In addition, Beinhocker notes that the Agreement provided that Bolen would be paid a monthly draw against his commission in the amount of $4,893, an arrangement similar to payment of a salary. (Agreement ¶ 3.2). Bolen, on the other hand, relies on section eight of the Agreement which states that he would act as an independent contractor. In addition, he states that Bolen's status as an independent contractor is further evidenced by the fact that he had to pay for the medical benefits he received pursuant to the Agreement, and that these were the only benefits he received.

There still remains a dispute of fact as to whether Bolen is an employee who, by virtue of *Manning*, cannot bring an action under ch. 93A, § 11. The paragraph in the Agreement stating that Bolen is an independent contractor deserves consideration, but is not determinative. *See Hurley v. Codman Mgt. Co.*, 27 Mass.App.Ct. 1136, 538 N.E.2d 39 (1989); *School Comm. of Boston v. Labor Relations Comm'n*, 24 Mass.App.Ct. 721, 727–28, 512 N.E.2d 1151, *review denied*, 401 Mass. 1102, 516 N.E.2d 1170 (1987). Furthermore, there is no indication in the material submitted by Beinhocker as to Paragon's right to control Bolen. As previously discussed, the right to control is critical to establishing an individual's status as an employee or an independent contractor. It is not even established if Bolen sold his services to other companies, although at the hearing on the motion, the suggestion was made that he worked only for Paragon. Furthermore, there is no indication of the manner in which Bolen paid taxes on his income from Paragon. Thus, there is a dispute as to a material issue of fact which precludes summary judgment, namely those facts establishing Bolen's legal status.

We also reject Beinhocker's assertion that Beinhocker is not within the class of businessmen covered by ch. 93A, § 11. Section 11 refers to individuals acting in a business context. *Begelfer v. Najarian*, 381 Mass. 177, 190, 409 N.E.2d 167 (1980) (*quoting Lantner v. Carson*, 374 Mass. 606, 373 N.E.2d 973 (1978)). An individual is "not immunized as an officer and director of a corporation for the acts he is alleged to have committed personally." *Nader v. Citron*, 372 Mass. 96, 102, 360 N.E.2d 870 (1977). Thus, the Supreme Judicial Court has held that corporate officers can be held liable for participating in unfair and deceptive practices. *Id.* at 103, 360 N.E.2d 870.

For all of the reasons stated above, defendant's, Beinhocker, motion for summary

---

1. Beinhocker has cited no authority for the proposition that as a matter of law, an independent contractor can always bring a claim under ch. 93A, § 11. This Court need not reach this question of Massachusetts law, as there is a material dispute of fact as to Bolen's status.

judgment on both claims against him should be denied.

Order accordingly.