John PAGLIARINI

v.

GENERAL INSTRUMENT CORP.

Civ. A. No. 91–12922–RGS.

United States District Court,
D. Massachusetts.

May 31, 1994.

Frank J. McGee, Joseph P. Hagerty, Jr., McGee & Phillips, Joseph D. McDonald, Marshfield, MA, for plaintiff.

Jennifer W. Catlin, Wm. Shaw McDermott, Kirkpatrick & Lockhart, Boston, Ma, for defendant.

### MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STEARNS, District Judge.

The Undersea Systems Division of General Instrument Corp. ("USD") hired the plaintiff, John Pagliarini, in 1986 to manage its acoustical engineering department. In September 1990, USD terminated Pagliarini's employment as part of an overall reduction in its work force. Plaintiff claims that he was laid off by USD because of his age. His lawsuit alleges violations of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, et seq.[1], the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq., and the Massachusetts Fair Employment Practice Act, G.L. c. 151B, § 4(1B). USD argues that Pagliarini has failed to adduce any evidence that he was terminated because of his age and that it is therefore entitled to summary judgment.

### FACTS

The following facts are deemed admitted under Local Rule 56.1.

USD develops and markets sonar technology. Pagliarini is an acoustical engineer experienced in multibeam sonar technology. Pagliarini was attractive to USD because of his role in helping to invent an application of acoustical technology known as the flextensional transducer, an item of great interest to USD's major customer, the U.S. Navy. Pagliarini was hired by USD in 1986 to manage the acoustical engineering department, a subunit of its engineering division. As a manager, Pagliarini supervised two other engineers who were already working in the department, Mario DeLara and Thomas Baldesarre. Pagliarini's specific responsibility was for research and development.

In the mid 1980's, USD was predominant in the field of multibeam bathymetric sonar.[2] Complacent about competition, USD confined its efforts to expanding upon its existing sonar technology and serving the U.S. Navy's needs. In the late 1980's, the flow of government contracts diminished, and USD's efforts to diversify its customer base were stymied by its overseas competitors. In order to cut costs, USD began in 1989 to lay off employees. Although the initial layoffs did not affect USD's engineering division, a general worsening of economic conditions forced

---

1. Plaintiff concedes that the Title VII claim should be dismissed. The exclusive federal remedy for employment discrimination by reason of age resides in the ADEA. See *Williams v. General Motors Corp.*, 656 F.2d 120, 127 (5th Cir. 1981).

2. Multibeam bathymetric sonar is a technology used to measure and map ocean deeps.

USD into an additional reduction in force in 1990. Donald White, USD's Vice President and General Manager, directed Kenneth Kiesel, the head of the engineering division, to rank his employees in their order of utility as a means of determining who would be let go. Kiesel prepared a list influenced by three considerations:

(1) existing contract requirements;

(2) systems in the field requiring future support; and

(3) completion of a product USD was developing for a foreign client.

Kiesel's list spared no employee in his division. Within the acoustical engineering department, Kiesel determined that Pagliarini was the most expendable employee as he was working on a refinement to an existing Navy system that offered no guarantee of economic benefit to USD.[3] As Kiesel was extremely reluctant to terminate Pagliarini because of his ability and reputation, he had Pagliarini visit the Navy on five occasions in an attempt to "market himself and the division." Unable to win any new Navy business despite Pagliarini's efforts, or to make other offsetting budget cuts, Kiesel selected Pagliarini as one of seven members of the engineering department to be laid off.[4] While DeLara and Baldesarre assumed some of Pagliarini's responsibilities, his position was left vacant. Pagliarini was 55 years old when he was terminated by USD. DeLara was 53, and Baldesarre 36.

### DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine issue as to any material fact and [where] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Gaskell v. Harvard Co-op Society*, 3 F.3d 495, 497 (1st Cir.1993). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993).

■ In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court adopted a burden shifting analysis to be used in evaluating employment discrimination claims. Under the Court's formula, once a plaintiff has established a prima facie case of discrimination, a presumption of discrimination arises. The burden then shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the employee's termination.[5] *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine, supra,* 450 U.S. at 254, 101 S.Ct. at 1094. See also *Sinai v. New England Tel. and Tel. Co.,* 3 F.3d 471, 473 (1st Cir.1993); *McKenzie v. Brigham & Women's Hosp.,* 405 Mass. 432, 438, 541 N.E.2d 325 (1989). If the employer produces evidence that an adverse employment action was taken for a legitimate reason, the *McDonnell–Burdine* presumption is rebutted and disappears from the case. *St. Mary's Honor Center. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). The plaintiff then has the opportunity to demonstrate "through presentation of his own case and through cross-examination of the defendant's witnesses, 'that the proffered reason was not the true reason for the decision,' and that [age] was." *Id.* (quoting *Bur-*

---

3. The two other members of the acoustical engineering department, DeLara and Baldesarre, were believed by Kiesel to possess mechanical skills critical to USD's short-term survival. Pagliarini's strengths, on the other hand, were theoretical and of less immediate advantage to USD.

4. The seven were laid off in two stages, four in June 1990, and three, Pagliarini among them, in September. Of the eleven employees terminated in Kiesel's division, six were above age forty, and five were below.

5. To establish a prima facie case of age discrimination in a reduction in work force case, as here, a plaintiff must show: (1) that he was at least forty years of age; (2) that he met legitimate job performance expectations; (3) that he experienced an adverse employment action; and (4) that the employer did not treat age neutrally or that younger employees were retained in the same position. See *LeBlanc v. Great American Insurance Co.,* 6 F.3d 836, 842 (1st Cir.1993), citing *Hebert v. Mohawk Rubber Co.,* 872 F.2d 1104, 1111 (1st Cir.1989). USD does not dispute that Pagliarini has established the first three elements of his prima facie case.

*dine, supra,* 450 U.S. at 256, 101 S.Ct. at 1095). See also *Mesnick v. General Electric Co.,* 950 F.2d 816, 825 (1st Cir.1991). The *McDonnell–Burdine* framework addresses only the formal allocation of the burdens of production; the "ultimate burden of persuasion" remains at all times with the plaintiff. *St. Mary's, supra,* —— U.S. at ——, 113 S.Ct. at 2749.

■ Plaintiff's case is fatally compromised by the fact that he has not met his initial burden under *McDonnell–Burdine* of establishing a prima facie case of age discrimination. The only "fact" Pagliarini presents in satisfaction of the fourth element of his prima facie case is that DeLara assumed the title of "Acting Manager" of the department after he was terminated.[6] DeLara, however, as plaintiff admits, is also a member of ADEA's protected class, and only two years younger than Pagliarini. Plaintiff alleges (without any factual showing) that DeLara "was earning substantially less money than was the plaintiff, and this was a determinative factor in the decision to terminate the employment of plaintiff Pagliarini." Plaintiff's Opposition to Summary Judgment at 6.[7] Even if this is true (and it has not been shown to be so), it does nothing to advance plaintiff's case. "Because age and ... [compensation levels] are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on ... compensation level is necessarily 'age-based.'" *Hazen*

*Paper Co. v. Biggins,* —— U.S. ——, ——, 113 S.Ct. 1701, 1707, 123 L.Ed.2d 338 (1993). See also *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1125–1126 (7th Cir.1994) (plaintiff could not defeat summary judgment simply by arguing that he was fired so that his employer could cut costs).[8]

Although at this point in the analysis, USD is entitled to summary judgment as a matter of law, I will address USD's articulated reasons for plaintiff's termination and plaintiff's claims of pretext. USD contends that Pagliarini was discharged as part of a reduction in its work force necessitated by USD's financial woes and that Pagliarini's expertise did not lend itself to USD's short term objective of financial viability.

■ To counter USD's apparently legitimate justification of his discharge, Pagliarini is required to produce evidence that would permit a finder of fact to conclude that USD's decision was actually motivated by age animus. See *LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 842–843 (1st Cir. 1993); *Goldman v. First National Bank of Boston,* 985 F.2d 1113, 1117 (1st Cir.1993). In this regard, Pagliarini must do more than simply question the employer's reasons. *Gadson v. Concord Hospital,* 966 F.2d 32, 34 (1st Cir.1992). He must put forth "definite, competent evidence fortifying [his] version of the truth." *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir.1993).

**6.** Plaintiff's statement at his deposition that an unidentified person at a meeting of management had attributed his firing to his "age and salary," is inadmissible hearsay. Pagliarini credited the anecdote to DeLara who in turn had supposedly heard it from a co-worker. Totem-pole hearsay is unavailing on a motion for summary judgment. *Bolen v. Paragon Plastics, Inc.,* 754 F.Supp. 221, 224 (D.Mass.1990). Both DeLara and the named co-worker have submitted affidavits disclaiming knowledge of any such scuttlebutt.

**7.** Plaintiff filed a "Supplemental Memorandum" over USD's objection on May 17, 1994, nine days before the hearing. The Memorandum is untimely and filed without the necessary leave of court. Consequently, I decline to consider any of its additional factual allegations. I note, however, that the Supplemental Memorandum does not remedy any of the deficiencies in plaintiff's origi-

nal pleading. Similarly, I decline to consider any additional factual allegations in USD's reply brief.

**8.** *Baxter* disavows the holding in *Metz v. Transit Mix, Inc.,* 828 F.2d 1202 (7th Cir.1987), the principal case upon which plaintiff relies, that it is age discrimination to discharge an older employer and replace him with a younger one to save money. Rather, in light of *Biggins, Baxter* recognizes the correctness of Judge Easterbrook's dissenting view in *Metz* that "[w]age discrimination is age discrimination only when wage depends directly on age, so that the use for one is a pretext for the other...." *Metz, supra* at 1212. Here plaintiff admits that if he was replaced at all (the facts are otherwise), it was by an employee roughly his age with greater tenure. There is no evidence that his putative replacement in fact was paid a significantly lesser salary.

Plaintiff's endeavor to cast USD's explanation for his termination in a pretextual light goes as follows. USD claims that at the time of the layoff its existing workload was better suited to the skills of other employees in Pagliarini's department. Pagliarini points to Kiesel's deposition testimony that, after his departure, DeLara and Baldesarre continued the work on several of his projects. There is nothing, however, about this fact that casts doubt on Kiesel's determination that DeLara and Baldesarre were more capable of doing what USD needed done, indeed, it tends to confirm it. Pagliarini also claims that he had more experience and better design skills than either DeLara or Baldesarre. USD does not pretend otherwise. USD says that it simply considered DeLara's and Baldesarre's mechanical skills more immediately valuable to the company than Pagliarini's theoretical strengths.

Pagliarini next points to purported contradictions in the reasons given by USD for his discharge. The statements Pagliarini has in mind, however, are not inconsistent with one another. The first is Kiesel's previously recounted deposition testimony describing the criteria he utilized in deciding who would be laid off within his department. Salary was not mentioned by Kiesel as a consideration. Pagliarini claims that Kiesel's deposition testimony conflicts with USD's interrogatory answers. In those USD states that "the specific criteria considered by Ken Kiesel *and Donald White* in determining which employees should be laid off as part of the cost reduction program were: "(1) the nature of the Division's existing contract requirements and the employee's role in meeting them; (2) general competence; (3) productivity (this involved a consideration of *salary* and output); and (4) the fit between the employee's skills and the immediate objecti[ves] of the Division." [Emphases added] These considerations, while more amply articulated than Kiesel's, do not conflict with his in any material respect.

Pagliarini cites two Eighth and Fifth Circuit cases involving race discrimination claims as supporting the proposition that an employer's contradictory explanation of its reasons for a personnel action give rise to an inference of pretext. Neither case, however, dealt with facts comparable to ours. *Paxton v. Union National Bank* [9] involved a class action suit brought by minority employees challenging a bank's promotion and pay practices. The court held that the defendant's "ad hoc, contradictory and conflicting explanations" for specific instances of promotional disparity did "not even begin to explain the broad pattern of promotional discrimination as a whole". *Id.* at 566. In *Boykin v. Georgia–Pacific Corp.,* [10] a class action involving minority employees of a sawmill, the court derided what it characterized as "subjective, standardless decision-making by company officials" responsible for pay and promotion policies. *Id.* at 1390. The discrepancy, even if it could be labeled as such, between Kiesel's and USD's recapitulations of the criteria used to decide which employees would be laid off, defies any comparison to the improvised, after-the-fact rationalizations deplored in *Paxton* and *Boykin.*

Pagliarini also argues that USD's failure to offer him a cut in pay in lieu of discharge raises an inference of discriminatory intent. Again, Pagliarini's support comes from cases that differ radically in their facts. *Metz v. Transit Mix, Inc.* [11] and *Clanton v. Orleans Parish School Bd.,* [12] cited by Pagliarini, hold generally that pretext may be demonstrated by a showing that less discriminatory alternatives to achieving the employer's goal were available. Kiesel states that to have kept Pagliarini in his position he would have been required to make other equivalent cuts and that he tried and was unable to do so. Notably USD did not replace Pagliarini, but simply delegated some of his responsibilities to DeLara and Baldesarre. *Metz,* while holding that the replacement of older workers with lower-paid younger employees can constitute age discrimination, also acknowledged the authority of *Hol-*

**9.** 688 F.2d 552 (8th Cir.1982).

**10.** 706 F.2d 1384 (5th Cir.1983).

**11.** 828 F.2d 1202, 1208 (7th Cir.1987).

**12.** 649 F.2d 1084, 1098 (5th Cir.1981).

*ley v. Sanyo Mfg., Inc.,* 771 F.2d 1161, 1168 (8th Cir.1985), which recognizes an employer's right to abolish an older worker's position and combine its duties with a job held by a younger person (although again, it has to be remembered that DeLara was 53 years old at the time he allegedly succeeded Pagliarini). *Id.* at 1207.[13]

■ Finally, Pagliarini argues that USD's description of him as "overqualified" could be construed as evidence of pretextual intent. The case plaintiff cites in support of this proposition is inapposite on its facts. In *Taggart v. Time Inc.,* 924 F.2d 43, 47 (2nd Cir.1991), the employer's only proffered justification for refusing to hire an older applicant was the assertion that he was overqualified, despite his expressed willingness to take any job that was available. Pagliarini, by contrast, was an existing employee whose retention, despite USD's efforts on his behalf, became unviable in light of USD's business necessities. In this context, the statement that Pagliarini was "overqualified" is a simple reflection of the fact that his talents were, in the eyes of his supervisors, poorly matched to the available work. No reasonable jury could interpret USD's assessment of the lack of fit between Pagliarini's skills and its perceived business needs as an implied criticism of Pagliarini's age.

In sum, even were I to find that plaintiff had satisfied his burden of establishing a prima facie case of age discrimination, I would find that he has failed to meet his additional burden of producing evidence from which a reasonable jury could conclude that USD's motives were in fact pretextual.

Having disposed of plaintiff's ADEA claim, it is appropriate that I dismiss the pendent state discrimination claim for want of subject matter jurisdiction. See *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Vega, supra* at 478 n. 2.

## ORDER

For the foregoing reasons, defendant's motion for summary judgment as to Count II of the Complaint is *ALLOWED.* Counts I and III of the Complaint are ordered *DISMISSED.*

SO ORDERED.

---

**13.** The reasoning of *Metz* has in any event been undermined by the Supreme Court's holding in *Hazen Paper Co. v. Biggins, supra,* as the Seventh Circuit acknowledged in *Anderson v. Baxter Healthcare Corp., supra.* As the Seventh Circuit conceded, the rationale of *Biggins* (which dealt with a discharge undertaken to avoid the vesting of a pension) "applies with equal force to cases where workers are discharged because of salary considerations." *Id.* at 1125.