SAXON THEATRE CORPORATION OF BOSTON *vs.* ROBERT SAGE & others.

Suffolk.    April 7, 1964. — June 23, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & REARDON, JJ.

*Contract*, What constitutes, Validity. *Deceit. Practice, Civil*, Amendment. *Pleading, Civil*, Demurrer.

Where a demurrer to a declaration in an action containing only counts in contract was sustained and the plaintiff appealed, a motion by the plaintiff to amend by substituting a declaration containing both counts in contract and counts in tort was allowed as to the tort counts but denied as to the contract counts, a demurrer to the tort counts was sustained, and the judge reported the case, the original contract counts as well as the tort counts were before this court.    [665–666]

An alleged contract to build a theatre and give a long term lease of it was unenforceable in that it left many material items of the matter unsettled for subsequent determination, such as the definite land to be leased and location of the theatre, the rent to be paid for a portion of the term of the lease, the exact identities of the lessor and the lessee, and the basic plans and specifications of the theatre.    [666]

An action of deceit could not be maintained based on alleged false representations by the defendant, allegedly relied on by the plaintiff to its

damage, that the defendant intended to build a theatre and give the plaintiff a long term lease of it and intended to perform an agreement between the parties to that end, where many essential items of the transaction, as it was set forth in the allegations, were left unsettled for subsequent determination, and reliance by the plaintiff on the alleged false representations would be unreasonable. [666–668]

CONTRACT. Writ in the Superior Court dated July 2, 1962.

A demurrer to the declaration was sustained by *Bolster,* J., and the plaintiff appealed. Following an amendment of the action to one of contract or tort and an amendment of the declaration adding counts in tort, a demurrer to those counts was sustained by *Beaudreau,* J., who then reported the case.

*Walter H. McLaughlin, Jr.,* for the plaintiff.

*Claude B. Cross (John M. Reed* with him) for the defendants.

SPALDING, J. The plaintiff's original declaration consisted of three counts in contract: one against Robert Sage, Harry Sagansky, and Louis Fox; one against the Boston Motor Hotel Trust; and one against Bay State Motor Hotel Trust. Each count was basically the same and sought damages for the defendants' breach of an alleged agreement, embodied in a letter, to construct a motion picture theatre and to lease it to the plaintiff on the terms set forth in the agreement.[1] The defendants demurred on several grounds. One of them, which is decisive, was that the agreement was so lacking in essential terms as to be unenforceable. The defendants' demurrer was sustained with leave to amend. The plaintiff appealed.

The plaintiff moved to amend its declaration by substituting a declaration in four counts: the first and third counts (in contract and tort respectively) were against Robert Sage, Harry Sagansky, and Louis Fox; the second and fourth counts (in contract and tort respectively) were

---

[1] The letter embodying the agreement, dated April 9, 1962, was written by the defendant Sage to the plaintiff, and one of the plaintiff's officers indorsed its assent on the letter. It reads in part as follows:

"This letter is written to express our mutual intent. Your signature hereto will indicate your accord.

against the Bay State Motor Hotel Trust. The motion to amend with respect to the tort counts (3 and 4) was allowed; with respect to the contract counts (1 and 2) it was denied.

The counts in tort, which were based on deceit and are similar, alleged the following: The defendants told the plaintiff's president ''that their intention was to construct

''I am to erect a theatre building with space for 1200 seats . . . . This theatre will be located on a part of the land of the present Jenney Gasoline Service Station at the junction of Commonwealth Avenue and Deerfield Street, Boston, Massachusetts. The Lessee will be obliged to paint, decorate, furnish and equip the theatre. . . . The Lessor, in substance, will deliver the building, including the men's and women's toilets, air conditioning, and will bring the electric power lines up to the place for the Lessee's proposed installations, and all run-offs thereafter will be done by the Lessee. Plans and specifications of both parties to be mutually agreed upon. The Lessee agrees to make cash expenditures of a minimum of $200,000 for the performance of the Lessee's work and the Lessee's other responsibilities, as aforesaid, and will furnish satisfactory evidence thereof.

'' As security for the lease, the Lessee will execute a security instrument covering all personal property installed for use in the operation of the theatre.

''The lease will be for the term of 30 years commencing upon availability of possession of the premises to the Lessee, and in no event, later than February 1, 1963. The Lessee agrees to take possession as soon as the Lessor has been able to complete the work and make possession available to the Lessee.

''The minimum rental will be at the rate of $60,000 per year, payable in equal monthly installments in advance during the first 12 years of the term, and the minimum rental for the next 8 years of the term will be at the rate of $35,000 per year, payable in equal monthly installments in advance, and for the balance of 10 years the minimum rental shall be such as the parties hereafter mutually agree upon prior to the execution of the lease.

''As additional rental, the Lessee will agree to pay in equal monthly installments an amount equal to all taxes . . . levied or assessed upon the demised premises or any part thereof. . . . [As part of the rent the lessee also undertook to pay the cost of certain insurance policies. Provisions with respect to the assignment of the lease and the lessee's duties to repair and restore were included.]

''The parties understand that this rental has been computed based on projected costs of the Lessor; that the Lessor has not had adequate opportunity to verify these costs; and that, therefore, if, upon verification, the Lessor determines that its costs exceed those originally estimated, the Lessor shall have the right to terminate this proposed arrangement for a lease, and thereupon, all rights of both parties hereunder shall terminate. Also, the parties understand that this proposed arrangement for a lease is contingent upon the ability of the Lessor to arrange to borrow monies secured by a first mortgage from customary sources and in a customary amount and on customary terms. Therefore, if the Lessor shall determine that the Lessor is unable to accomplish this borrowing under construction and/or permanent mortgage, then the Lessor shall have the right to terminate this proposed arrangement, and thereupon, all rights of both parties hereunder shall terminate.

''The lease will have such other terms and conditions as may be appropriate and reasonable for a lease of this type.''

a theatre on . . . [a certain] parcel of property, which they intended to lease to the plaintiff, to be operated by the plaintiff under a long-term lease." The plaintiff, acting in reliance upon the representation, entered into an agreement, embodied in a letter, with the defendants for a lease of the theatre.[2] The defendants stated that their intention was to perform the agreement. The defendants never intended to build the theatre, lease it to the plaintiff, or perform their agreement. The representations made by the defendants were made with the intent that the plaintiff would rely on them. The plaintiff did in fact rely on these representations and released publicity advertising the location of the proposed building. It also negotiated a contract with Cinerama, Inc. to exhibit its pictures. In June, 1962, the defendants informed the plaintiff that they would not perform their agreement to construct a theatre and lease it to the plaintiff. By reason of the defendants' false representations, the plaintiff suffered special damages by being unable to perform the contract with Cinerama. "The plaintiff was further damaged because . . . if the representations of the defendants had been true, the plaintiff . . . would have made extensive profits from the operation and management of . . . [the] theatre."

The defendants demurred to the third and fourth counts on the ground that they were insufficient in law to enable the plaintiff to maintain its action. The demurrer was sustained and the judge reported the case.

1. A question of practice requires discussion. The defendants suggest that only the tort counts are before us. In support of this position they cite cases holding that after a demurrer to a declaration has been sustained and a superseding amendment has been allowed the demurrer to the original declaration will not be dealt with. Cases to this effect are *Cole* v. *Wells,* 224 Mass. 504, 512, *Hushion* v. *McBride,* 296 Mass. 4, 8, *Revere* v. *Blaustein,* 315 Mass. 93, 97, *National Overall Dry Cleaning Co.* v. *Yavner,* 321 Mass. 434, 436, *Palmer* v. *Motley,* 323 Mass. 129, 133. The reason for this rule is sound, because ordinarily the amended dec-

---

[2] The agreement referred to is that set forth in footnote 1.

laration would entirely supersede the original pleading, thereby making the question of its sufficiency academic. But that is not the situation here, for the amended declaration was allowed only as to the tort counts. Thus it cannot fairly be said that it superseded and made moot the contract counts in the original declaration. We are of opinion, therefore, that the sufficiency of these counts, as to which there was an appeal, ought to be considered.

2. The original declaration presents the question whether the agreement embodied in the letter is sufficiently complete to support an action of contract. We are of opinion that it is not. The terms set out in the letter are uncertain in many material respects and indicate that the parties had reached the stage of "imperfect negotiation" and not that of a completed contract. *Rosenfield* v. *United States Trust Co.* 290 Mass. 210, 217. It left open for future determination many matters. There is only a general description of the location where the theatre would be placed and no description of the exact boundaries of the land to be leased. The rent to be paid in the final ten year period was left unsettled and the letter stated that it must be settled "prior to the execution of the lease." The exact identities of the lessor and lessee were not settled. Finally, the basic plans and specifications were "to· be mutually agreed upon." We are of opinion that the letter is too indefinite to be enforced as an agreement. *Lyman* v. *Robinson,* 14 Allen, 252, 254. *Kaufman* v. *Lennox,* 265 Mass. 487. *Geo. W. Wilcox, Inc.* v. *Shell E. Petroleum Prod. Inc.* 283 Mass. 383, 387, 390. *Rosenfield* v. *United States Trust Co., supra,* at pp. 216–217.

3. The third and fourth counts of the plaintiff's amended declaration do not make out a case in deceit. Because of the nature of the alleged false representations set forth in the declaration, any reliance on them would not be reasonable. The representations were: an intention "to construct a theatre . . . [and] to lease [it] to the plaintiff, to be operated by the plaintiff under a long-term lease," and to "perform the agreement for a lease." Neither of these

allegations can provide the basis for a reasonable reliance on successfully working out a long term lease where so much was left for future negotiations.

The representation of an intention to build a theatre and give a long term lease to the plaintiff is no more than an offer to negotiate. The court said in *Rosenfield* v. *United States Trust Co., supra,* at 216, "Normally the fact that parties contemplate the execution of a final written agreement justifies a strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled."

We are of opinion that the plaintiff could not reasonably rely on a representation of an intention to draw up and execute a mutually acceptable lease when essential terms of it had not yet been stated or settled. The proposed lease would involve detailed negotiations and it might turn out that no lease acceptable to the parties could be worked out. *Lyman* v. *Robinson,* 14 Allen, 242, 254.

The representation that the defendants would build the theatre and lease it to the plaintiff is hardly more than a statement of opinion — a prophecy, as it were — that a lease acceptable to both parties would be agreed upon in the future. The case "falls within the ordinary rule that false statements of opinion, of conditions to exist in the future, or of matters promissory in nature are not actionable." *Yerid* v. *Mason,* 341 Mass. 527, 530, and cases cited. The case of *Barrett Associates, Inc.* v. *Aronson,* 346 Mass. 150, on which the plaintiff relies is not to the contrary, for there the intentions which were misrepresented were definite and precise.

The representation of intention to perform the agreement for a lease also does not provide a basis for an action in deceit. The plaintiff cites Restatement: Torts, § 530, and *Schleifer* v. *Worcester No. Sav. Inst.* 306 Mass. 226, for the proposition that a deceit action lies for a misrepresentation of intent to perform an agreement even if the agreement is unenforceable as a contract. However, that principle reaches only an agreement which is unenforceable

because it is not in the required form, as where, because oral, it is obnoxious to the statute of frauds or the parol evidence rule; it does not cover a contract unenforceable, as here, because essential terms are missing.   Until all the essential terms are settled, it cannot reasonably be said that there is a meaningful intention which can be misrepresented.

*Orders sustaining demurrers affirmed.*