Flatley, J.
This is an action by the purchasers of real estate to recover for the deceit and negligence of the seller’s real estate broker, defendant Doris Vital (“Vital”), and for the unfair and deceptive practices in violation of G.L.c. 93A of both defendants.
Plaintiffs Michael E. Hinkley, Sr. and Catherine H. Hinkley (the “Hinkleys”) allege that they sustained monetary damages in direct consequence of defendant Vital’s false, misleading and deceptive representations upon which they relied in deciding to purchase a house lot for the construction of their home in Hudson, Massachusetts.
The lot in question had once been part of a larger parcel of land upon which the Zina family operated a pig farm. The Zinas subdivided their land to create a number of *92 house lotsonZinaRoad which they transferred to their children, and one larger parcel behind these lots which they retained. The farm owners’ daughter, Zenna Zina, acquired the lotwhich is the subject of this controversy, and offered itfor sale through real estate broker Doris Vital. Zenna Zina is not a party to this action.
The subject lot abutted the pig farm operated on the Zinas’ larger land parcel. Mrs. Hinkley had grown up in the Town of Hudson and was aware of at least the prior operation by the Zinas of apigfarm in the area, and the noxious odors which emanated from the same. After observing continued house construction along Zina Road, however, the Hinkleys responded to a newspaper sales advertisement for the lot in question. The Hinkleys allege that in response to their several, direct inquiries about the status and continued operation of the pig farm made during the parties’ negotiations, defendant Vital made false representations of material facts, made untrue statements in reckless disregard of their truth or falsity, and failed to disclose the only material facts of which she actually had any knowledge.
The Hinkleys also allege that Mrs. Vital was an employee or agent of defendant DiTommaso Realtors (“DiTommaso”). DiTommaso filed a cross-claim against Mrs. Vital, who denied liability. At trial, DiTommaso asserted an unpleaded defense (without objection) that pursuant to a written contract, Mrs. Vital was an independent contractor and not an employee or agent of DiTommaso.
Judgment was entered for both defendants on the plaintiffs’ complaint, and for Mrs. Vital on DiTommaso’s cross-claim. The trial court made subsidiary findings and rulings in addition to its action upon the plaintiffs’ thirty-four (34) requests for rulings.
The plaintiffs now claim to be aggrieved by the trial court’s denial of twenty-two of their requests.
1. The court’s disposition of plaintiffs’ request number 34 is dispositive of this appeal. It is unnecessary, therefore, to address the court’s rulings on plaintiffs’ remaining requests, many of which sought findings of fact not required by the reported evidence, and were properly denied as requests upon which the trial judge was not required to act. Dist./Mun. Cts. R. Civ. P., Rule 52(a); Ashapa v. Reed, 280 Mass. 514, 516 (1932).
Plaintiffs’ request number 34 and the trial court’s ruling thereon were as follows:
34. There was evidence presented at trial which would warrant a finding for the plaintiffs.
34. DENIED.
Request number 34 tested the sufficiency of the evidence by requiring the trial judge to rule as a matter of law whether there was any evidence introduced at trial which would support afinding for the plaintiffs. Rummel v. Peters, 314 Mass. 504, 517-518 (1943); Bresnick v. Heath, 292 Mass. 293, 298 (1935). Where such evidence in supportof the requesting party canbefound anywhere in the record, the denial of such a “warrant” request constitutes reversible error unless the trial judge has demonstrated by proper and valid subsidiary findings of fact that his ruling was not based on the insufficiency of the evidence or on any misapplication of the law. DiGesse v. Columbia Pontiac Co., 369 Mass. 99, 101 et. seq. (1975); Liberatore v. Framingham, 315 Mass. 538, 554-555 (1944); Perry v. Hanover, 314 Mass. 167, 173-174 (1943).
2. The report sets forth extensive evidence introduced at trial in support of the plaintiffs’ claims. The record discloses that prior to reaching any agreement for the purchase of the lot, the Hinkleys met with Mrs. Vital and Zenna Zina at the site, and “expressly inquired of Mrs. Vital about the status of the pig farm.” The plaintiffs testified that in response to their direct inquiry,
Mrs. Vital replied that the farm was closed, and that no one was around to operate it, there were only a handful [sic] of pigs left, that for all intents and purposes the farm was not operational and that within a year it would totally not exist.
Mrs. Vital added that she “would not be surprised if there were condominiums at *93 the farm site within one year.” Mrs. Vital testified that she had no recollection either of any question by the Hinkleys at their first meeting about the future of the pig farm, or of any statement she made about the farm’s status.
The reported evidence also establishes that Mrs. Vital admitted to having met with Helen Zina, the owner of the pig farm, prior to meeting with the Hinkleys at the lot site. Mrs. Vital further admitted that she asked the owner whether she wanted to sell her farm, to which Helen Zina “replied curtly that she bad no intention of selling the farm.” Zenna Zina, the lot seller and daughter of the farm owner, also testified that she told Mrs. Vital that it was unlikely that her mother would sell the farm because it was her mother’s only source of income. Both the plaintiffs’ and the defendant’s testimony were consistent on the telling point that Mrs. Vital never disclosed to the Hinkleys either her conversation with thefarm owner orher conversation with Zenna Zina. The reported evidence clearly demonstrated that Mrs. Vital, by her own admission, knew that the farm owner had no intention of selling.
There was additional, conflicting testimony as to a later discussion contemporaneous with the Hinkleys’ delivery of the executed purchase and sale agreement. Mrs. Hinkley testified that the broker again told her that “the farm is closed.” Mrs. Vital denied that such conversation took place.
2. It is thus clear that ample evidence was introduced at trial in support of the plaintiffs’ claims. Given the existence of such evidence, the denial of plaintiffs’ request number 34 could be sustained only if the trial court’s findings of fact rendered such request immaterial by demonstrating that the court’s ultimate finding was not based on an erroneous assessment of the sufficiency of the plaintiffs’ evidence or other incorrect ruling of law. The court’s subsidiary findings and rulings included the following:
The plaintiffs subsequently met with the owner and Vital on site. They were shown the boundaries and had a discussion with Vital about the pig farm. ... Vital told the Hinkleys that the owners of the pig farm had subdivided the land and transferred the house lots, of which the subject lot was one to the children, and that the pig farm was going to close within a year according to her information. As a result, the Hinkleys signed a Purchase and Sale Agreement... and later purchased said lot....
The pig farm did not close and is still operating....
Doris Vital committed no unfair and deceptive practices in her dealings with the Hinkleys. She did not represent the owner of the pig farm, nor hold herself or [DiTommaso] Realtors out as representing the pig farm. Vital never represented to the Hinkleys that she had talked with the owner of the pig farm about the operation of the pig farm. This statement of opinion about the future closing of the pig farm is not an unfair and deceptive act. Nor are Vital’s statements representations of facts. They were statements concerning a third party operating a pig farm on adjacent property and thus a prophecy, not facts. Vital did not lie to the Hinkleys.
Vital had no duty to the Hinkleys concerning events in the future as pertinent herein. There is no negligence in Vital’s statements of her perception of the future of the adjacent pig farm owned by the parents of the seller.
It is evident from these findings that, despite defendant Vital’s denials, the court accepted as true and found as fact that the Hinkleys did directly inquire about the status and continued operation of the pig farm, and that Mrs. Vital made representations to the Hinkleys “according to her information.” These representations were clearly inconsistent with all of the information obtained by Mrs. Vital according to her own testimonial admission, by which she was bound. Perry v. Hanover, supra at 170. The court recognized defendant Vital’s admission that she had a conversation with Helen Zina, the farm owner, and also accepted uncontroverted testimony that Vital *94 never disclosed such conversation to the Hinkleys. These findings obviously failed to justify the court’s denial of plaintiffs’ request number 34, or to render such request immaterial.
3. It is equally clear that despite its findings of fact, the court ultimately rejected the sufficiency or probative value of the plaintiffs’ evidence on the basis of two erroneous rulings; namely, thatMrs.Vital’s statementswereinactionable expressions of opinion as to future events, and that Vital was under no obligation, as seller’s broker, to make a full disclosure to the Hinkleys.
It is established that “false statements of opinion, of conditions to exist in the future, or of matters promissory in nature are not actionable.” Yerid v. Mason, 341 Mass. 527, 530 (1960). See also, Saxon Theatre Corp. of Boston v. Sage, 347 Mass. 662, 667 (1964); Barrett Assoc., Inc. v. Aronson, 346 Mass. 150, 152 (1963). Whether a statement is a representation of fact or mere expression of opinion or estimation often depends on an assessment of several factors which include the nature of the representation, the meaning of the language used as applied to the subject matter, the relationship of the parties, the opportunity afforded for investigation and reliance and all attendant circumstances. John A. Frye Shoe Co. v. Williams, 312 Mass. 565, 663-665 (1942). Under any standard, those statements of defendant Vital’s to the effect that the “farm was closed” and that “for all intents and purposes the farm was not operational” were obviously misrepresentations of existing fact rather than opinions as to future conditions. Even if the trial judge disbelieved evidence that these specific statements were made, the judge did believe evidence of Mrs. Vital’s additional remark that the farm would be closed within oneyear. This statementwas an actionable misrepresentation because made by Mrs. Vital as a statement of her own knowledge or information, which she intended to be accepted as true by the Hinkleys and which she knew to be untrue or at least inconsistent with all of the information she had admittedly received. See Pietrazak v. McDermott, 341 Mass. 107, 109 (1960); John A. Frye Shoe Co. v. Williams, supra at 664. Contrary to the trial court’s ruling, Mrs. Vital’s response to the Hinkleys’ inquiry gave rise to a duty of full disclosure, and her failure to include reference to her conversations with Helen Zina and Zenna Zina in such response rendered her statements actionable.
Although there may be ‘no duty imposed upon one party to a transaction to speak for the information of the other... if he does speak with reference to a given point of information, voluntarily or at the other’s request, he is bound to speak honestly and to divulge all the material facts bearing upon the points that lie within his knowledge. Fragmentary information may be as misleading ... as active misrepresentations, and half-truths may be as actionable as whole lies...’
Kannavos v. Annino, 356 Mass. 42, 48 (1969). See also, Maxwell v. Ratcliffe, 356 Mass. 560, 562-563 (1970).
4. Given ample evidence in support of the plaintiffs’ claims for actionable misrepresentations by defendant Vital herein[3] and the absence of proper treatment of such evidence in the trial court’s subsidiary findings, the denial of plaintiffs’ request number 34 was reversible error. The court’s judgment on both the complaint and cross-claim[4] is hereby vacated, and this action is returned to the Marlborough Division for a new trial.
So ordered.

 Evidence of Mrs. Vital’s actionable misrepresentations supports not only the plaintiffs’ tort claims, but their claims for G.L.c. 93A, §9 damages as well. See, generally, Heller v. Silverbranch Constr. Co., 375 Mass. 133, 137 (1978); Glickman v. Brown, 21 Mass.App. Ct. 229, 234-235 (1985); Montanez v. Bagg, 24 Mass. App. Ct. 954 956 (1987).

 As the plaintiffs’ claim against DiTommaso and DiTommaso’s cross-claim against Vital are derivative in nature, a new trial against both defendants is required.