# United States Court of Appeals
## For the First Circuit

No. 07-1770

JOSEPH RODI,

Plaintiff, Appellant,

v.

SOUTHERN NEW ENGLAND SCHOOL OF LAW;
FRANCIS J. LARKIN; DAVID M. PRENTISS,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Torruella, Lipez, and Howard,
Circuit Judges.

Jonathan D. Plaut, with whom Chardon Law Offices was on brief,
for appellant.
Elizabeth A. Houdling, with whom Allen N. David, and Peabody
& Arnold LLP were on brief, for appellees.

June 30, 2008

**HOWARD**, **Circuit Judge**.    Joseph Rodi graduated from Southern New England School of Law ("SNESL") in 2000.  Because the school failed to achieve American Bar Association ("ABA") accreditation prior to Rodi's graduation, he is unable to sit for the New Jersey bar examination.  As a result, Rodi sued SNESL, alleging that the deans of the school made false statements to him regarding the school's accreditation prospects that induced him to remain at SNESL and forgo other opportunities.  He claimed fraud and a violation of a consumer protection statute.  The district court granted summary judgment for SNESL after concluding that no reasonable jury could find his claims meritorious.  We affirm.

## I.  Background

We state the facts necessary to set the context for the case here but include more where needed.  We present these facts in the light most favorable to Rodi.  See Hadfield v. McDonough, 407 F.3d 11, 14 (1st Cir. 2005).

In March of 1997, Joseph Rodi applied to Southern New England School of Law -- a law school unaccredited by the ABA. Soon after Rodi applied, the ABA's Accreditation Committee recommended SNESL for "provisional accreditation," which would allow graduates of the school to sit for the bar examination in all fifty states.[1]  Dean Francis Larkin, then acting dean of SNESL,

---

[1]  Although graduates of provisionally accredited law schools are entitled to the same recognition given to graduates of fully approved law schools, a law school must be provisionally approved

sent prospective students, including Rodi, a letter detailing this development. Although Larkin noted that the Committee's recommendation had to be ratified by two more ABA entities, he wrote, "We are highly confident of gaining these favorable approvals at the ABA Annual Meeting in August." Rodi -- who intended to eventually sit for the New Jersey bar examination[2] -- enrolled at SNESL. At all relevant times, the law school catalogue contained a disclaimer that provided: "The Law School makes no representation to any applicant or student that it will be approved by the American Bar Association prior to the graduation of any matriculating student."

Despite Larkin's optimism, in August the ABA denied SNESL provisional accreditation. It notified SNESL that the school was not in substantial compliance with a number of ABA accreditation standards and expressed concern about the school's compliance with other accreditation standards.

Around a month later, in September of 1997, Dean Larkin hosted a student meeting at SNESL; Rodi attended. At this meeting, Larkin said SNESL would reapply for provisional accreditation at its next opportunity and assured the students that the school had rectified deficiencies in its application. Larkin also promised

_____

for at least two years before receiving full ABA accreditation.

[2] New Jersey requires bar applicants to hold degrees from ABA accredited law schools.

that the ABA would grant SNESL accreditation, stating "The school will be accredited by the ABA the next time around and before you graduate."

In the summer of 1998, following his first year at SNESL, Rodi sent transfer applications to Rutgers and Seton Hall law schools. Dean David Prentiss, who had replaced Dean Larkin as acting dean, received notice of Rodi's interest in transferring. He wrote Rodi a letter asking him to consider carefully whether a transfer was in his best interest. In this letter, Prentiss cited the progress SNESL had made toward achieving ABA accreditation and noted, "[T]here should be no cause for pessimism about the school's ultimate achievement of ABA approval." Although Rodi received Prentiss's letter, he chose not to withdraw his transfer applications. Both law schools ultimately denied him admission.

During discovery it was revealed that when both Dean Larkin and Dean Prentiss made these statements they had concerns regarding SNESL's prospects for accreditation. Dean Larkin said that in August of 1997, after the ABA denied SNESL provisional accreditation, he was not highly confident that SNESL's renewed application would be successful. Similarly, Dean Prentiss said that he did not know how the ABA would rule on the renewed application and that he recognized SNESL was at the low end of the spectrum with regards to the resources necessary to garner accreditation.

In November of 1999 -- during Rodi's third year at SNESL -- the ABA's Accreditation Committee rejected SNESL's renewed application for accreditation and did not recommend that SNESL be granted provisional accreditation. The Committee cited SNESL's failure both to comply with ABA standards and to present a reliable three-year plan for complying with the standards. SNESL did not appeal the Committee's decision. Although Rodi graduated from SNESL in September of 2000, because SNESL failed to receive ABA accreditation prior to his graduation he is unable to sit for the New Jersey bar examination.

In June of 2003, Rodi sued SNESL, Larkin, and Prentiss in the United States District Court for the District of Massachusetts.[3] He claimed that the defendants' statements constituted fraudulent misrepresentation and violated a consumer protection statute, Mass. Gen. Laws ch. 93A, §§ 1-11 ("Chapter 93A"). The district court granted the defendants' motion to dismiss and ruled, without elaboration, that Rodi failed to state a claim upon which relief could be granted. We reversed the district court in part and remanded the case for further proceedings after concluding that Rodi alleged a colorable

---

[3] Rodi originally filed suit in July, 2002 in the United States District Court for the District of New Jersey. However, the court dismissed his case for want of in personam jurisdiction leading him to file this action in Massachusetts. See Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 11 (1st Cir. 2004) (describing this sequence of events).

fraudulent misrepresentation claim and that he should be allowed to amend his Chapter 93A claim to remedy pleading deficiencies. See Rodi, 389 F.3d at 20-21.

On remand, Rodi filed a motion for reassignment pursuant to Local Rule 40.1(K)(2). In this motion, he claimed that the terms of the remand did not require the original judge to conduct further proceedings and that no substantial savings of time would result if the judge did retain the case. The judge denied his motion, specifically finding that her familiarity with the case would result in a savings of time.

After discovery, the district court granted SNESL's motion for summary judgment on Rodi's fraudulent misrepresentation claim. Although the court questioned whether the deans made false statements of material fact, it concluded that even if they had made such statements Rodi's reliance was unreasonable as a matter of law. The court similarly dispensed with Rodi's Chapter 93A claim, concluding that Rodi's inability to prove fraudulent misrepresentation sealed the claim's fate. Rodi appeals.

## II. Discussion

Rodi presents three arguments on appeal. His first and primary argument is that the district court erred in granting summary judgment to SNESL on his fraudulent misrepresentation claim. Relatedly, he argues that the court erred in granting summary judgment to SNESL on his Chapter 93A claim -- which was

also premised on the conduct underlying his fraud claim.  Finally, Rodi argues that the district judge should have either recused herself from this case or reassigned it to another judge pursuant to Local Rule 40.1(K)(2).  We take up each claim in turn.

## A.  Fraudulent Misrepresentation

We review grants of summary judgment de novo.  Vives v. Fajardo, 472 F.3d 19, 21 (1st Cir. 2007).  Because this is a diversity case, Massachusetts law controls.  B & T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 38 (1st Cir. 2004).

Under Massachusetts law, to recover for fraudulent misrepresentation Rodi must allege and prove that:  (i) the defendants made a false representation of a material fact with knowledge of its falsity for the purpose of inducing him to act thereon, (ii) he relied upon the representation as true and acted upon it to his detriment, and (iii) that his reliance was reasonable under the circumstances.  Rodi, 389 F.3d at 13; Masingill v. EMC Corp., 870 N.E.2d 81, 88 (2007).  Although the reasonableness of a party's reliance is ordinarily a question of fact for the jury, Cataldo Ambul. Serv., Inc. v. City of Chelsea, 688 N.E.2d 959, 962 (1998), if no reasonable jury could find the party's reliance reasonable a court may grant summary judgment.  See Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc., 62 F. Supp. 2d 236, 242 (D. Mass. 1999) (citing Saxon Theatre Corp. v. Sage, 200 N.E.2d 241, 244-45 (1964)).

Rodi focuses his claim of fraudulent misrepresentation on statements made by Dean Larkin and Dean Prentiss during their respective stints as deans of SNESL.[4] His argument is as follows: Statements made by the deans, specifically Larkin's statements in the fall of 1997 and Prentiss's statement in the spring of 1998, misrepresented SNESL's accreditation prospects. The misrepresentations were made knowingly because both deans, when publishing their statements, had information suggesting that provisional accreditation was unlikely. The deans spoke for the purpose of inducing Rodi to remain at SNESL, fearing an exodus of students would cost the school a substantial amount of money and further undermine the school's chances of achieving accreditation. Because he trusted the deans, whom he assumed had access to information regarding the school's true accreditation status, Rodi relied on their statements and chose to forgo opportunities available to him, such as the pursuit of a Ph.D. As a result of his forbearance, he suffered damages including lost tuition, salary that would have been available to him had he held a job during his

_____

[4] Although Rodi does identify statements made by other administration and faculty members, he does not specifically argue that these speakers knowingly made false statements for the purpose of inducing him to rely or that he reasonably relied on these statements. Accordingly, we do not examine those statements here. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

-8-

years of attendance at SNESL, and potentially the loss of financial benefits associated with holding a Ph.D.

After consulting the summary judgment record, we find his argument unpersuasive and conclude that the district court correctly granted summary judgment to SNESL. We do so because even assuming that Dean Larkin and Dean Prentiss made false statements of material fact for the purpose of inducing Rodi to remain at SNESL, no reasonable jury could find (1) that Rodi relied on their statements, or (2) that his reliance was reasonable. We address the frailties in Rodi's fraudulent misrepresentation claim in that order.

Rodi claims that he relied on statements made by the deans but this is directly contradicted by his own actions. In the summer of 1998, following Larkin's statements, Rodi sent transfer applications to two law schools: Rutgers and Seton Hall. Despite Prentiss's letter asking him to reconsider his decision to seek a transfer, Rodi chose not withdraw his applications. Rodi's attempts to transfer to an ABA accredited law school strongly suggest that he did not believe the deans' statements regarding SNESL's prospects for ABA approval.

Rodi's failure to offer an explanation for his unyielding pursuit of a transfer is damning. Rodi could have easily offered plausible explanations for both his attempted transfer and his failure to withdraw his applications that would have been

technically compatible with his assertion that he relied on Larkin's and Prentiss's statements.[5]  Instead, he says nothing and thus fails to undercut the powerful inference that he never relied on what the deans were saying regarding accreditation in the first place.

Rodi, perhaps realizing the significance of his failure to withdraw the application, attempts to shore up the reliance element of his claim by baldly asserting that he did rely and by adding that, if not for the deans' statements, he would have pursued a Ph.D.  His effort falls short.  First, his claim that he did rely is merely a conclusory allegation insufficient to defeat summary judgment.  See Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).  Second, his claim that he relied by foregoing the pursuit of a Ph.D is dubious in light of his failure to explain away his transfer attempt.  Put simply, if the deans' respective statements were not enough to convince Rodi to relinquish his pursuit of a transfer, it seems equally unlikely they would have been enough to persuade Rodi to shelve his pursuit of a Ph.D.

---

[5]  For example, Rodi could have offered evidence that he sought a transfer because he wanted to attend a school closer to his home in New Jersey and that he did not withdraw his applications simply because of the hassle of doing so.

But even if Rodi <u>did</u> rely on Dean Larkin's and Dean Prentiss's statements, his reliance was unreasonable. This becomes evident once we analyze what the deans said.[6]

Dean Larkin made two statements: first, that SNESL had rectified the deficiencies in its application that the ABA had identified and second, that the ABA would grant SNESL accreditation before the students graduated.[7]

As for Larkin's first statement, it was unreasonable for Rodi to believe that SNESL had remedied accreditation problems significant enough to derail its application in just four weeks. See <u>Yorke</u> v. <u>Taylor</u>, 124 N.E.2d 912, 916 (1955) (noting reliance cannot be deemed reasonable when alleged misrepresentation is "palpably false").

---

[6]   Although Rodi contends that Dean Larkin and Dean Prentiss promised him and the SNESL student body on "numerous occasions and in numerous locations that they were certain of achieving ABA accreditation," the only statements pled with particularity are Dean Larkin's statement in September of 1997 and Dean Prentiss's statement in July of 1998. See <u>Rodi</u>, 389 F.3d at 15 (noting that the Federal Rules of Civil Procedure require allegations of fraud be "stated with particularity" and that this requires "an averment 'of the who, what, where, and when of the allegedly false or fraudulent representation'"). Rodi's reference to student affidavits fails to cure this particularity deficiency. These affidavits only reference Dean Larkin's statement in September of 1997 with the requisite detail and otherwise contain only general statements that the deans made various verbal representations to the student body.

[7] Dean Larkin also told the students that SNESL would reapply for provisional approval at its next opportunity. Because the school did so we need not analyze the statement further.

-11-

But it was even more unjustified for Rodi to rely on Larkin's second statement promising accreditation before Rodi graduated. First, at all times Rodi was attending SNESL, the law school catalogue contained a disclaimer which provided: "The Law School makes no representation to any applicant or student that it will be approved by the American Bar Association prior to the graduation of any matriculating student." Although disclaimers, under Massachusetts law, do not serve as automatic defenses to allegations of fraud, see Sheehy v. Lipton Industries, Inc., 507 N.E.2d 781, 784 (Mass. App. Ct. 1987), they obviously may be considered when assessing the reasonableness of a party's reliance. The school, through its disclaimer, essentially urged Rodi and other SNESL students to ignore statements such as the one made by Dean Larkin.

Second, SNESL's accreditation fate was ultimately in the hands of a third party, the ABA. This is a fact that Rodi and every other SNESL student had squarely confronted when the ABA denied the school's accreditation in August of 1997. Accordingly, Rodi acted unreasonably in crediting Larkin's promise that an entity over which Larkin had no control would do something. See Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 781 N.E.2d 787, 795 (Mass. App. Ct. 2004) (holding plaintiff's reliance on defendant's representation regarding a deal's finality unreasonable

-12-

because plaintiff should have been aware that a third-party had final approval authority).

Finally, prior to his statement in September of 1997 Larkin had been exposed as a flawed prognosticator. In a letter to Rodi prior to the first denial of accreditation in August of 1997, Larkin wrote that he was "highly confident" that SNESL would gain accreditation in August. Larkin's history of making inaccurate predictions rendered any reliance on his statements unreasonable. As the proverb provides, "fool me once -- shame on you, fool me twice -- shame on me."[8]

We now turn to Dean Prentiss's statement. In a letter sent to Rodi in July of 1998 Prentiss stated, "[T]here should be no cause for pessimism about the school's ultimate achievement of ABA approval." Rodi acted unreasonably in relying on this statement simply because its content, regardless of its accuracy, offered little to hold onto. Aside from being, at best, a lukewarm endorsement of the school's likelihood of attaining accreditation, the fact that the Dean was specifically discussing the school's "ultimate accreditation" should have meant very little to Rodi.

---

[8] Similarly, a development following the September 1997 meeting also should have convinced Rodi to ignore Larkin's promise. Rodi claims that at the meeting Larkin promised the "student body" that SNESL would be accredited before they graduated. Such a body would have included third year law students slated to graduate in May or June of 1998. Once that latter date came and went, accompanied by Larkin's broken promise to the third year students, Rodi had yet another reason to doubt Larkin's statement.

Unlike Larkin, who promised accreditation before Rodi graduated, Prentiss did not go as far. This was the summer after Rodi's first year of law school and his window of opportunity to graduate from an accredited law school was rapidly closing. By putting faith in a dean's weak prediction of ultimate accreditation, he acted not only improvidently but unreasonably.

Rodi, nevertheless, argues that his reliance was reasonable. First, he contends that it was reasonable for him to rely on statements made by the deans because he trusted them. Second, he argues that, at the least, the reasonableness of his reliance is a question for the jury. His arguments are unavailing. First, even if Rodi trusted his deans, both the content and context of their statements -- detailed above -- made his reliance unreasonable. See Collins v. Huculak, 783 N.E.2d 834, 840 (Mass. App. Ct. 2003) (holding reliance by sons on father's representations unreasonable because of circumstances surrounding representations, despite the fact that sons claimed they trusted their father). Second, it is settled law that the reasonableness of a party's reliance is not necessarily a jury question. See Saxon Theatre Corp., 200 N.E.2d at 244-45.

In sum, at trial Rodi would be charged with persuading a jury that, among other things, he relied on the word of his deans and that his reliance was reasonable. Given the grave deficiencies present in both the reliance and reasonable reliance elements of

-14-

his claim, we are convinced that no reasonable jury could be so persuaded.  See Bennett v. Saint-Gobain Corp., 507 F.3d 23, 30 (1st Cir. 2007) (noting that where the "nonmovant-plaintiff has the burden of proof, the evidence adduced on each of the elements of his asserted cause of action must be significantly probative in order to forestall summary judgment") (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).  Accordingly, the district court correctly entered summary judgment in favor of SNESL.

## B.  Chapter 93A

Rodi also claims that SNESL's actions violated a consumer protection statute, Mass. Gen. Laws ch. 93A, §§ 2, 9.[9]  Chapter 93A makes unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, § 2(a).  "Conduct is unfair or deceptive if it is 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness' or 'immoral, unethical, oppressive or unscrupulous.'"  Cummings v. HPG Int'l Inc., 244 F.3d 16, 25 (1st Cir. 2001); see also Travis v. McDonald, 490 N.E.2d 1169, 1171 (1986).

In order for Rodi to recover under Chapter 93A based on his claim of fraudulent misrepresentation he must prove reasonable

---

[9] Although SNESL claims that Rodi did not comply with the thirty-day demand letter requirement, the district court nonetheless reached the substance of the claim.  We follow its lead.

reliance.  See Trifiro v. N.Y. Life Ins. Co., 845 F.2d 30, 33 n.1 (1st Cir. 1988);  Mass. Laborers' Health & Welfare Fund, 62 F. Supp. 2d at 243 (holding plaintiff could not recover under Chapter 93A for claim based on fraud where plaintiff failed to prove reliance on false statements was reasonable).  As discussed above, that is not possible here.  We therefore conclude the district court correctly entered summary judgment for SNESL on this count.

## C.  **Recusal and Motion for Reassignment**

Finally, Rodi argues that the district judge should not have presided over his case for two reasons.  First, he claims that the district judge should have recused herself from his case because she had spoken at an SNESL graduation, had received an honorary degree from the school, and had spoken favorably of their accreditation efforts.  Second, he argues that, at the very least, on remand the judge should have reassigned his case.  As to this point, he contends that a judge should only retain a matter if doing so would result in a substantial savings of time.  Because no answer had been filed and no discovery had been conducted, he argues that in his case that was not the situation.

Rodi did not file a motion for recusal with the district court but rather a motion for reassignment.  In that motion, he claimed only that the court should reassign the case because retaining the case would not result in a substantial savings of time.  Accordingly, Rodi's recusal argument is waived.  See United

-16-

States v. DiPina, 230 F.3d 477, 486 (1st. Cir. 2000); In re Abijoe Realty Corp., 943 F.2d 121, 127 (1st Cir. 1991).

However, Rodi's claim that the district judge should have granted his motion for reassignment under Local Rule 40.1(K)(2) is properly before us. Under 40.1(K)(2), when this court remands a case to the district court, the district judge must reassign the case unless either (1) "the terms of the remand require that further proceedings be conducted before the original judge" or (2) the judge determines that retaining the case will result in a substantial savings of time and the interest of justice does not require that further proceedings be conducted before a different judge. We review the district court's application of its local rule for an abuse of discretion. Crowley v. L.L. Bean, Inc., 361 F.3d 22, 25 (1st Cir. 2004).

There was no abuse of discretion. The judge found that retaining the case would result in a substantial savings of time because the Court was familiar with the background and procedural history of the case and had already conducted a status conference with the parties. As such, she acted well within her discretion in declining to reassign Rodi's case. See Conley v. United States, 323 F.3d 7, 15 (1st Cir. 2003) (noting circuit's practice of giving deference to district court's reassignment policies).

### III.  Conclusion

For the reasons stated above, we affirm the judgment of the district court.

**AFFIRMED**.